Good afternoon, your honors. Good afternoon. May it please the court, my name is David Wiest and it's my privilege to be here before you today arguing on behalf of the appellant, Sarah Reedy. I'd like to request two minutes for rebuttal. Thank you. Probable cause isn't proof beyond a reasonable doubt, is it? No, it's not. It doesn't guarantee that an innocent person will never be arrested or held against their will and ultimately exonerated? No, it doesn't. Now we have here a person who was homeless. She was alone. She admits when the alarm power was mysteriously shut off, she had used marijuana. She was untruthful about using diazepam and her boyfriend put down $165 or something more than that in renting a trailer. Why isn't that probable cause? My honor, first, some of those facts are disputed. I don't believe that that's accurate. Would that really matter? I mean, we're dealing here with a no reasonable officer. You can be wrong on probable cause. Absolutely. There's got to be more than suspicion. There's got to be more than this doesn't make sense, this is suspicious, we're not sure what's happening here. How does the power pack get pulled off on an alarm system? Where's the phantom that came in and did this? No one's ever determined that, but it doesn't fit a she reported to the police. She couldn't be the one that did that. She reported to the police that her attacker forced her into the back room where the power cord was pulled the phone cords out of the wall and pulled the phone off the wall. It was all over the floor. There are pictures. It was all over the floor in that room. If she was making up that story, she certainly would have said. And by the way, he told me to pull the power cord too. It makes no sense that she would have reported one and not the other. And a reasonable officer has got to consider that a reasonable officer has got to consider what's the alternative? What happened here? If what she's saying is not the truth, what is the truth? Detective Evanson admitted he had no theory of what happened. He didn't know what happened to the money. Where could it have gone? The police came and saw her. They never found the money. They never found it on her boyfriend who showed up at the scene. Why would he have showed up at the scene if he was part of this? It makes no sense for him to arrive at the scene and submit himself to the police if he was part of this and took the money. I don't doubt that to us, it might not seem like probable cause. I don't doubt that to many detectives that might not have been probable cause. But we're dealing with a reasonable officer here. Now, a reasonable officer couldn't rely upon all that. We're supposed to come down with a decision that says when you're faced with this situation, that's not enough. Of course, some of the things Judge Van Antwerpen cited were never in the initial affidavit. That's correct. They were not in the affidavit. They weren't made part of the probable cause. There was nothing in there about drug use. There was nothing in there about marijuana. There was nothing in there about diazepam. Nothing in there about doubt and credibility because of drug use, recent drug use. Exactly. That was not part of what was submitted to the magistrate. Let me ask a question on that, by the way. There's an allusion in your briefing to that questioning about drug use being inserted into the record much later in time. Yes. Is that a matter that's been pursued at all? Was that commented on by the district court? I didn't see any comment by the district court, but was that? The district court did not comment about that because the issue of drug use was not raised before the district court. That's just something that's been raised on appeal. As Judge Barry pointed out, it wasn't part of the affidavit. It was in the police report, but the concise statement of facts submitted to the district court was solely based on the affidavit. We had no reason to address the drug use issues before the district court and the district court didn't comment on it. The district court did address the drug use. There was some use of marijuana that came out. He discussed her. I found it perhaps a little bit of an overstatement, quote, recent spiral into the use of controlled substances, end quote, because five or six days earlier she apparently had used marijuana. He did address it. I apologize. But it was not made an issue by the defendants. But not the issue of the cooking of the alleged cooking of the police report after the fact, right? No, and that was not an issue that we were required to raise because they relied solely on the affidavit, which he did find contained false information and material omissions. He took him to the woodshed. He took Evanston to the woodshed with the omissions and the false statements in the affidavit. But then again, at the end of the day, he bent over backwards in favor of the affidavit. Precisely, precisely. And when you say he took him to the woodshed, I would agree, but I still think he didn't go far enough. And we pointed out in our brief additional facts. He didn't view everything in the light most favorable to Sarah Reedy as he was required to do. He was putting in the facts as she gave them. Is this like a double thing he was supposed to have done? Not only put in her what she said, but then to put a spin on them to make them even more in her favor? I don't know if a double. Well, he's inquired to require the district court is required to draw all inferences in favor of the non moving party, which we don't believe he did. That's for purposes at the end of the day. But in terms of putting the allegations in the corrected affidavit, I don't think you have to spin them in the most favorable light to her. Or do you? Or do you? I mean, that's a question. None of those establish probable cause. At best, it's suspicion, and that's not enough. Is this probable cause? The probable cause inquiry is, as the question you've had already so far, I think, indicates and you've agreed, is as an objective standard, right? Yes. You lay a lot of emphasis on the alleged predisposition and bias of Officer Evanson. And I'm wondering how, if at all, that should affect us in trying to decide what would these facts look like to an objectively reasonable officer? Assume for the sake of discussion that we were to accept, yeah, Officer Evanson was completely biased and bad in his approach. What does that have to do with our looking at the facts of record and trying to do it in an objective way? Because both the defendants and the district court have indirectly relied on Sarah's alleged failure to cooperate or reluctance to cooperate. Now, that's not set forth in their enumerated facts, but they both mention it and say, well, there was an inference that she didn't cooperate with the police, and so that can be part of this probable cause. Well, that's certainly heavily evident in the district court's discussion. Right. It's not in his enumerated facts. And our point regarding his treatment of her was the reason she might have been perceived as failing to cooperate was because from the first time she met him, he was accusing her of lying, of stealing the money, and all kinds of things. And under those circumstances, it's certainly understandable that she wouldn't be crazy about going back to meet with him, even though she did the day after she was released from the hospital. So it's relevant to understand perhaps her reactions and if you're looking at it in the light most favorable to her, why she did or didn't do things she did or didn't do. But are you conceding that it's not relevant when one looks objectively at it and asks what would a reasonable officer perceive from these facts? Because a reasonable officer would know that his treatment of her is what caused this so-called reluctance and failure to cooperate. It's probably confusing here with what has to be shown to show probable cause and what has to be shown to assess whether qualified immunity should apply. Yes. I mean, the district court found there were essentially that Evanston knowingly and deliberately with reckless disregard made false statements and omissions in that affidavit. Yes. But where the district court, then the district court found that any such statements or omissions were not material to the finding of probable cause. Correct. And I think that's where the probable cause issue is. Only if you win that do we get to the second part, or does the jury? Correct. Correct. We have to establish that there was not probable cause. That there was not probable cause. Yes. And the district judge really found that this, as corrected, even as corrected, there was probable cause. Yes. Because the omissions and false statements were not material to a finding of probable cause. Now, if we found he was wrong on the materiality, you go back to a jury, right? Correct. Or do you? Well, we still have to get past the qualified immunity. Once you find whether or not there's probable cause, then the court has to decide whether a reasonable officer Yes, the qualified immunity issue follows after that. Before you get to a jury. Isn't reasonableness, especially where there seem to be disputed facts and disputed interpretations, isn't that a paradigm question of facts? I would think so, Your Honor, although the cases seem to suggest that qualified immunity is a determination for the court, but it is a reasonable officer standard. And it would seem to me a case like this screams out for a jury to look at these facts and determine whether a reasonable officer should have found probable cause. Well, I'm certainly going to be interested in Mr. Craven's take on this, too, but I'm interested in yours as well. How can – if we were to determine the probable cause issue by saying no probable cause, no reasonable officer can say there was probable cause, what would be left of a qualified immunity assertion? I don't believe there would be anything left. The qualified immunity issue we decide on. I mean, whether the affidavit's good or bad and whether there's qualified immunity or not all comes down to that single question, a reasonably – objectively reasonable officer's view of whether there's probable cause. Is that right? Correct. I think there are issues of what facts should be considered in that analysis, but – We can even assume that there was no probable cause and go right to the – right to the qualified immunity analysis, if we want. Yes, that is – if it's found that there's no probable cause, the second step would be could a reasonable officer have believed there's probable cause. That's correct. How about the – we have this other offense. It was a mile and a half away. It was at night, what, 91 days later. It was a robbery, and there was oral sex involved, and it was done by a white guy in blue jeans. That, I think, is a fairly common description. Well, I think there was a more specific description than that. Okay. There was a weapon. Both of them used a black handgun. Okay. Both of them used the same sex act, which was a little bit more specific than that. They were right off of the same Route 19, which a mile and a half away in Cranberry Township. I mean, there were numerous similarities, and these were the only two. There may have been one other, but either two of two or two of three sexual assaults in Cranberry Township for that year, both were led – both investigations were led by Detective Evanson. And the state trooper that we deposed, this individual was ultimately a serial rapist across Pennsylvania. The state trooper who was in charge of the statewide task force said, a detective investigating those two cases should have recognized those similarities, and he never put them together. How about if that happened in Philadelphia? I mean, you get – there is such a thing as copycat crimes. You'll admit that. Sure, sure. Maybe in Cranberry Township or whatever it was, this should have stood out like a sore thumb. Probably not in Philadelphia. Perhaps, but we're looking at – you know, this is where it occurred. So it's a sliding scale maybe? I think you're looking at a reasonable officer. Even if it would have been in Philadelphia, if it would have been the same detective looking at the cases, I think there were enough similarities that that should have stood out. Well, Reedy couldn't have been a copycat because the landmark assault would have been the copycat of Reedy. Exactly. That's what I'm saying. Right. But, again, I'm not sure how much publicity was over this incident. Ultimately, there was when the attacker was caught. What would the jury hear? If you've got your jury trial, what would the jury be able to hear? They'd hear about the affidavit. They'd hear about the corrected affidavit. Would they hear about other facts that were never in any – either of the affidavits, facts that would enhance the probable cause, although never stated, facts that would – well, pre-arrest facts, not post-arrest facts – that would enhance her credibility? I mean, how much would the jury be allowed to learn or hear at a trial? Well, I think it depends on how the legal issue is framed at that point in the case. If there's probable cause to arrest. If there's probable cause to arrest, I think the defendants would be limited on focusing what was in the affidavit and what they showed to the magistrate. We would be entitled to show the additional facts more favorable to Sarah that disproved probable cause, and we think there's a lot out there. The landmark attack, there's lots of things out there that no reasonable officer should have been able to look at this and say there's probable cause that she made up this entire story and took the money, which is how they concluded. There are some facts that Evanston did not put in this first affidavit that he could have, such as Reedy's supervisor saying that after she met Watts a few weeks earlier, her personality changed, she began missing work, and the drug use wasn't in there, and his noticing that her eyes were dilated, her speech was slurry. I mean, none of that was in the affidavit. I can't imagine why it wasn't. Would they be able to hear that, or would it be restricted to the affidavit? Well, it would be my position that they would not be able to hear that because Detective Evanston obviously determined that that wasn't relevant to probable cause. Well, he certainly would be crossed on that if he took the stand. Absolutely. I mean, he was directed by the assistant district attorney to only include things that are relevant to probable cause, and he included what he included, and those things work. Yeah, but he's throwing the assistant DA under the bus now. That's true. All right. That's true. I think we're over. Okay. We'll get you back on rebuttal. All right. Thank you, Your Honors. Mr. Craven. Thank you, Your Honor. And may it please the Court, Charles Craven here for the appellees. The Court has raised a number of questions. What was the matter with this detective? Six months? I'm astounded. I realize we have to judge this by the no reasonable officer standard, but after that second incident. Your Honor, he was in charge. We're not talking about Philadelphia here. We're talking about this little township or whatever it was. Two assaults, right? Not three. Two in the whole year, and he's the investigating officer on both with a handgun, very graphic description in both instances of the way the fellow likes to get his pleasure. And I think you'd have to concede that the MO is remarkably similar. So you have two, and they look very, very, very much alike. How is it possible that a reasonable officer can say and still maintain on appeal that it would take a confession or DNA to get him to see a link? That was his testimony, Your Honor. Well, isn't that, I guess my question to you then is, is that not a confession that this man is not as far from being a reasonable officer? So if we're going to look for what a reasonable officer would think, we'd better be looking for someplace other than Detective Evanson's assessment? Oh, no, Your Honor. With respect, I disagree with that assessment. Then what does it take? What does it take? Is it really the position of the defendants that the only thing that would cause a reasonable officer to link the landmark attack and the attack on Ms. Reedy would be DNA or the assailant's confession? Is that your best position? That's not our legal argument, Your Honor. What's your argument? Our argument is that there are differences between those two attacks. Tell us what they were. Yeah, what? The one had semen on her blouse, and the other one didn't. There was one that had no evidence, no physical evidence that would support what the victim said, and that's the Reedy case. The landmark case had physical evidence of an attack. They occurred in different locations, maybe within the same township. Maybe there were some similarities to this. Less than two miles apart. I agree, and only a few months apart, too. But I think that there are sufficient differences. Why is it that Detective Evanson thought, you know, this Reedy attack is something I should mention on the serial rapist phone call, but it didn't occur to him the same day that maybe he should be thinking twice about submitting an affidavit for her arrest? How do we account for that? They got a fax that very same day in that department talking about the serial rape investigation. Which? The same day he submitted the affidavit. Which, by the way, Detective Evanson initiated. He asked for that. He asked for the serial rape investigation by the Commonwealth. How does that help you? Well, it does. There's a serial rapist out there. He knows it. He's not just the lead investigator on the landmark assault and Reedy assault. But he knows there's a serial rapist out there on the day he submits the affidavit. But he still can make a distinction between the two incidents. And he still, I think, has probable cause to suspect. That's really the kicker, isn't it, Mr. Craven, when you say he still has probable cause? Because the standard we've got to look to is whether the things that got left out or were misstated in his affidavit amount, when they're added back in, amount to probable cause. And we have to do that in the light most favorable to Ms. Reedy, right? So if you say, well, he knew. He knew there was a serial rapist out there. And he knew that Ms. Reedy's case was pertinent to that because he himself weighed into those waters. Is it possible to say that that's an immaterial fact? No, Your Honor. Okay, so if that's a material fact. And he left it out, which he sure did. When we add it back in, as we're required to, help us get to where a reasonable officer considering that would say, hey, you know what, let's go arrest her now. The court has to take a look at what the court is adding or subtract. It has to look at the reconstructed affidavit from the point of view of an objectively reasonable officer, not in favor of the plaintiff as the victim or in favor of the amici as the advocates for the victim, but from the point of view of a reasonable police officer. But do we not, and actually this is a very important point and something that Judge Berry was asking your learned colleague, don't we have to, in considering what the reasonable officer would be looking at, don't we have to give that set of facts the most favorable possible construction from Ms. Reedy's perspective? Isn't that, in fact, what summary judgment demands of us, the standard that we're operating under here? I don't think so, Your Honor. And I think that there's a two-step process. And the first step is to find out what the facts are in the case. Now, I'm not saying that you determine the facts, you decide the facts like a jury. But for summary judgment purposes. You have to look at them in the light most favorable to the nonmoving party, right? That's true. Then once, and I think that the district court. And the district court said that repeatedly. True. And the district court, I think, bent over backwards for the plaintiff in constructing the facts so that the district court could then reconstruct the affidavit. That's where I've got a question for you. Because when you say the district court bent over backwards, why don't you speak to what Mr. Wake said when he noted that the district court seemed to put pretty heavy reliance on what he characterized as her lack of cooperation and her reticence and her becoming upset when questioned about the alarm system. If you really look at this in the light most favorable to Ms. Reedy, don't you have to say, well, maybe that has something to do with being called a liar within an hour or two after you've been forced to commit oral sex on a stranger who held a gun to your head. And maybe that has something to do with being told that you and your boyfriend are going to go to jail because they know you're guilty. Maybe it has something to do with after giving three full statements on the night of the rape, you're told, come to the police station tomorrow and write it all down for me again. If you're looking at this in the light most favorable to the victim, Ms. Reedy, isn't it possible that you'd have to say, well, maybe that would tend to make a person less than eager to go talk to Detective Evanson again? I think that you have to take the two steps. The first step is to determine what might be the historical facts. And if there's a difference between what Ms. Reedy would say and what the detective would say, like, for example, the day of the interview. And as the district court did, the district court construed the record and construed the facts most favorable to the plaintiff. But the second step is to take the facts, reconstruct the affidavit, and then from the point of view of an objective, reasonable police officer, then you assess those facts and determine whether there's probable cause. Context is everything, though, right? The context here is everything. That's totality of the circumstances. So I'm pushing a little bit because I don't think I'm getting any answer to my question. There's nothing in the actual affidavit or in the surgically revised affidavit, as the district court put it, that ever alludes to the practically immediate and repeated aggressive stance that the investigator took toward Ms. Reedy. That's nowhere evident in either the real affidavit or the later one. And if you're going to lay emphasis and legal consequence on what you say is her reluctance to cooperate, how can you do that without taking account of Detective Evanson's behavior toward her? I think that the district court did take account of that, Your Honor. Where? When the district court said in its opinion, if I can paraphrase, that during the course of the interview, Detective Evanson believed that Ms. Reedy was hostile. Let me quote to you. This is what the district court actually said. Whether Detective Evanson had a predisposition towards plaintiff's potential fabrication of the entire incident from the start of his investigation does not change the inculpatory information concerning plaintiff's indecisiveness about any follow-up meeting with Detective Evanson. How can that possibly be true to the summary judgment standard? If we look at this in the light most favorable to Ms. Reedy, how could we say, as the district court did, well, you know what, no matter what Detective Evanson did with respect to her, it has nothing to do with her, quote, indecisiveness about a follow-up meeting, unquote. Because, Your Honor, as a matter of law, whether Detective Evanson had malice towards her, a predisposition against her, is irrelevant in the probable cause analysis. And also the cases hold. How can that – it may be that if he never voiced it or he were out there in a vacuum that that would be true. But assume he did have malice and it was manifest in the ways that she believes it was manifest from the things she was saying right from the get-go when she told Nurse Ferry, he called me a liar, there when she's getting the rape kit done. Assume that, as you must, because the record shows it, that he wasn't silent about it, he was vocal about it. If he's vocal about it, how can it be irrelevant to an assertion that she was indecisive or reluctant to cooperate? I mean, don't we have to look at this totality of the circumstances in looking to see how her behavior plays into what the district court says amounts to probable cause? Yes, I think you do, Your Honor. But you have to – what is not material is the attitude of the police officer is not material. And secondly, the cases hold that a police officer does not have to believe what the victim says. The police officer can look at the facts that otherwise might be very innocent. For example, a detective comes into the emergency room. He has certain facts in mind. She's the only person there. There's no physical evidence. Twenty minutes before this thing went down, the alarm goes off. Let's say he comes into the ER and he says, Sarah, you did it. Or he says it even in stronger terms. He's got a theory that he's testing out, and she reacts to it being offended. From a reasonable detective's point of view, I think his behavior is acceptable, and he could reasonably construe her reaction. Except all that, even if we were to accept that, it's not getting to the question I'm trying to ask and I'm evidently doing a poor job at. The district court here laid heavy emphasis on what it called the indecisiveness and reluctance of Ms. Reedy to cooperate, something which you could legitimately dispute, given that she gave three full statements the night of the rape and a written statement on the 16th, which was literally the next day after she got out of the hospital, and said, yeah, I'll take a polygraph. So you could question whether that really amounts to not being cooperative. But assuming the district court were right, that there was something less than full cooperation there, the fact that the district court gives that heavy play in its probable cause analysis, doesn't that make Evanson's conduct relevant? Doesn't it mean that we have to look at what Evanson did and not ignore it the way the district court did? I don't think that the district court ignored that conduct. I just read it to you. The district court said it doesn't matter whether Detective Evanson had a predisposition is irrelevant. And that's true as a matter of law. I'm sorry. Let me move to something just a little different. What did he learn more than two or three days after the attack? Anything new? That's a rhetorical question because the answer is no. The only thing he learned after the attack was three months later there was the landmark attack. And he still did nothing. And three months after that, he finally filed the affidavit. If he had filed this affidavit, the arrest warrant, at or about the time of the assault, perhaps we could excuse that. It was a hasty judgment based on what he had. He had to make a quick decision. But he had six months during which time there began a serial rape investigation, of which he knew, and a second attack that bore all the indicia of this attack. Why did he wait one week, three months, six months before he did what he did? Doesn't that undercut any conclusion of reasonableness? With all due respect, Your Honor, I don't think it does. I think that if he acted sooner, the question might be, well, why did he act so soon? Yeah, that would be the question. But then when he waited, he's got all kinds of sexual assaults going on. Well, I also respectfully disagree. He believed this was a ruse. He believed that she was lying to him about the attack. Forget the money, the attack. He didn't believe her from the get-go. Yes. And as his investigation proceeded over those days. That's my question. What did he learn to call that into question over those days? Over those days, he spoke with Hazlitt. He spoke with the alarm company. He learned that. He knew the alarm, the plug had been pulled when he was at the scene that day, the day of the attack. I'm not sure that that's in the record, Your Honor. I think that he discovered that the plug had been pulled. Yeah, that's right. He knew it that day. Afterwards. He knew the plug had been pulled when he went to the scene that day. I think he found out the time later, didn't he? Hazlitt told him later the time. Yeah, it was 20 minutes before. I don't think that Detective Evanson. This is a small point. No. Six months? Yes, there's no rush. I guess not. To this. Does he have to have a theory of the case? I mean, I was very interested to see that when the assistant district attorney sends him back to the drawing board and says, in effect, this affidavit's not good enough, he never goes back to the assistant district attorney. And what he does turn in is found to be rife with omissions and misstatements. And then when he's asked the deposition, he says, in effect, says, I don't know how she could have committed the crime. I haven't thought about the details of it. Do any of those things bear on whether there was probable cause from an objective perspective? I don't think so, Your Honor, because I don't think that the officer has to spell out in the affidavit exactly how the suspect performed the acts. In other words, well, she reached into the cash register with her left hand or something like that. I think that the affidavit has to show sufficient facts that from a reasonable police officer's vantage point, he would say it is probable that she did this. Now, originally what he put in was almost the entire police report, which included all of her details. He didn't put it in the affidavit. He put nothing in, virtually nothing in the affidavit, the initial affidavit. The one he first drafted and then sent over to the DA, the ADA, had all this in there. It had her statements about how it happened. It had the details about the attack. And then Fullerton says this is too much for the affidavit. Doesn't he say more than this is too much? Doesn't he really say, in effect, you need to speak to the crimes? I mean, you're making out an affidavit that says somebody committed a crime. You haven't addressed the elements of the offense. I mean, I couldn't quote the Fullerton piece to you, but my understanding was he was kind of getting after him for just throwing in the kitchen sink and not helping the magistrate or whoever the reviewing judge was to understand, how does what you're saying constitute the offense you're trying to get this lady arrested for? And Fullerton was expecting him to come back with a redrafted affidavit. Yeah, Fullerton said he expected her to come back, but he also said that Evanston could still go forward without – All of a sudden, it became very important, very important to Evanston to get that thing filed immediately. I'm just wondering why. After six months of nothing. Not another attack that was ever done. I can't answer that. It's not your fault. I understand that, Your Honor. You admit you didn't move to dismiss the emotional distress claim, did you? Did we make a motion? Did you make a motion to dismiss the emotional distress claim? You did not, did you? It was part of our motion for summary judgment that all the claims be dismissed. I don't think you included that, did you? I thought we moved for summary judgment on all claims. We'll see. And, you know, the plaintiff came back and said, well, you weren't explicit about the emotional distress claim, but she didn't present anything in the record that would show that it's a viable claim. At one point, you made a statement you wanted all claims dismissed, and he says you weren't explicit about it. That's really what the problem is. Yes. But in addition to that, I mean, we made a motion for summary judgment on all claims. The plaintiff comes back and says, well, you weren't explicit about the emotional distress claim, but then she also does not carry her burden under summary judgment to show facts of record that would support the claim, and the claim is legally viable on that. We've taken you well beyond your time. I appreciate the opportunity, Your Honor. Thank you. Rebuttal. Thank you, Your Honors. To briefly address the emotional distress claim, if you read the motion in the brief, the motion itself at the end does say defendants move for entry of final judgment in their favor, but there is no specific mention in either the motion or the initial brief of the emotional distress claim. I didn't think so. That's correct. Can you point to anything in the record, though, that shows that Evanson was intentionally acting to cause really emotional distress, that his aim and object was to cause her emotional distress? Do you have to show that? I believe his actions from the outset when he was accusing her of a crime and then falsifying the police report, putting false material in the affidavit. After her arrest, we've talked about Melissa Fignar, who was the woman that he coerced a statement from, a clearly false statement that implicated her. You may say, and indeed do say, that Detective Evanson was a badly misguided police officer, but if we took everything as you described it in the light most favorable to your client, where is there evidence that he was doing these things not because, misguided though he was, he really believed she was a liar and guilty of the crime, but because he wanted to wreck her life and cause her emotional distress? I believe under the evidence that we've presented, the jury is entitled to hear that claim and make that decision, whether that was part of his motivation in doing this or what was part of his motivation. What would cause a police detective to do something like this? I really can't explain what he did. They could infer it from the circumstances. Yes, that's correct, Your Honor. Unless there are any other particular questions, most of the items I was going to address have already been addressed. It's a tough case. Thank you, Your Honor. It was certainly tough on Ms. Reedy, and thank you for your time. We'll take it under advisement. Thank you very much.